UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTIE L. ANDERSON, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CASE NO. 1:23-cv-1500 |
| | ) |
| FRANCISCAN ALLIANCE, INC. | ) |
| d/b/a FRANCISCAN HEALTH CARMEL, | ) |
| | ) |
| Defendant | ) |

***PLAINTIFF'S COMPLAINT FOR DAMAGES AND REQUEST FOR TRIAL BY JURY***

Comes now Plaintiff Christie L. Anderson (hereinafter "Anderson"), by counsel, and for her claims against Defendant Franciscan Alliance, Inc. d/b/a Franciscan Health Carmel ("Franciscan"), alleges and says:

### I.  FACTUAL ALLEGATIONS

1. Anderson is a resident of Fishers, Hamilton County, Indiana.

2. Franciscan hired Christie L. Anderson to work for it as a Food Service Associate at its facility at 10777 North Illinois Street, Carmel, Indiana 46032. Franciscan hired Anderson on or about April 11, 2022. Franciscan wrongfully terminated Anderson's employment on or about January 31, 2023. During her entire period of employment with Franciscan, Anderson did good work and met all of Franciscan's reasonable expectations.

3. In her food service associate position, Anderson delivered food to patients in their rooms, worked on food preparation and performed dishwashing. Anderson worked 40 hours or more per week.  Her base wage was $15.00 per hour and she was paid a night shift differential. Anderson liked her job.

4. Anderson was hired by the Kitchen Manager named Juan Castillo. Mr. Castillo was no longer employed by Franciscan at the time of the termination of Ms. Anderson's employment.

5. At the time of her termination, James Krebs was the new Kitchen Manager.

6. In approximately September 2022, Franciscan hired a chef and manager named Francisco Polanco Gonzales. Mr. Gonzales was one of Anderson's managers/supervisors. This was particularly true as Anderson was often scheduled to work the evening shift and Mr. Gonzales was her only manager on duty. Often, in the evenings, Mr. Gonzalez was the only manager and Anderson was the only food service employee whose work he was directing.

7. Not long into his employment, Francisco Gonzalez became personal and flirtatious in his comments and questions to Anderson. Mr. Gonzalez went so far as to ask Anderson if she had ever had sex and whether she was taking birth control. At the time, Anderson did not know that Mr. Gonzales was married or that he had children.

8. In addition to the fact that Mr. Gonzales was Anderson's boss, Mr. Gonzalez was believed to be about 42 years old. Anderson was 24 years old.

9. On the evening of November 4, 2022, Anderson was the only food service associate working for Mr. Gonzales, the night chef manager. After working together at the prep table, Mr. Gonzales took a break and went to his office. After a time, Mr. Gonzalez asked Anderson to come into his office. Gonzales proceeded to ask Anderson questions about her love life and escalated the conversation to the point that he told Anderson he didn't do things for free. At that point, Gonzales approached Anderson and began kissing her on both the lips and her neck. Gonzales quickly became more aggressive and got Anderson on the floor, mounted her and

raped her.

10. Anderson believes that she made it home from work around 9:00 - 9:30 p.m. Anderson may not have given all of the details of Gonzalez sexual attack, but Anderson told her father, Mark Anderson, right away that she was afraid to return to work.

11. The very next day, November 5, 2022, Anderson telephoned 911 to report Gonzalez for rape. The 911 operator connected Anderson with the Carmel, Indiana city police. Anderson spoke first with an officer and was then connected with Detective Mark Paris. Initially, Detective Paris told Anderson to meet him at the emergency room at St. Vincent's Hospital on 86th Street in Indianapolis to submit to an examination and rape kit. Anderson did so, but the nurse in charge of the rape kit procedure was not at St. Vincent's Hospital. Anderson was asked to travel to Eskanazi Hospital in Indianapolis to meet this nurse. She did so and submitted to medical examination and the rape kit. Mr. Gonzalez' DNA was found.

12. Mark Anderson, Ms. Anderson's father, first reported Mr. Gonzalez for raping Christie Anderson to Franciscan management. Mark Anderson first made the report to Franciscan's executive chef, Raul Roges. Mr. Roges referred Mr. Anderson to the Franciscan Human Resources Manager at the Carmel facility (believed to be named "Cathy"). Ms. Anderson then had at least 2 interviews with Cathy.

13. Christie Anderson reported Francisco Gonzales to Franciscan for raping her immediately afterward. As mentioned above, Ms. Anderson was interviewed at least twice by the Franciscan human resources manager named Cathy.

14. Right after Ms. Anderson reported her manager for rape, Franciscan managers began a campaign to retaliate and shame Anderson. The acts of retaliation included:

1. Franciscan managers including Human Resources Manager Cathy, Kitchen Manager James Krebs and Executive Chef Raul Roges threatened Ms. Anderson and pressured her not to speak to anyone about Francisco Gonzales or the fact that he had raped her.

2. Almost immediately after the report, Executive Chef Raoul Rogers took away most of Ms. Anderson's preferred job duties - particularly delivery of food to patients and food preparation - and instead made Ms. Anderson work away from other food service workers as a dishwasher.

3. James Krebs actually threatened to discipline Ms. Anderson and "write her up" for telling a coworker that Francisco Gonzales had raped her.

4. Moreover, Franciscan began to criticize Ms. Anderson's work and did write her up claiming she was not performing her job well.

5. The human resources manager named Cathy tried to shame Ms. Anderson for reporting Francisco Gonzales for rape by telling her Mr. Gonzales had children and had "mouths to feed."

6. The human resources manager named Cathy apparently learned that Ms. Anderson had also been a child victim of sexual abuse and battery by a step-parent (who was prosecuted and imprisoned). Even though it was incredibly inappropriate, Cathy interrogated Ms. Anderson about the earlier sex abuse.

7. James Krebs became increasingly hostile toward Ms. Anderson, often yelling at her. For example, Krebs yelled at Christie Anderson several times when he learned she was crying about rape by Francisco Gonzalez.

15. Ultimately, Franciscan fired Christie Anderson in retaliation for her rape report and request for help. Ms. Anderson was fired on January 31, 2023 by the Human Resources Manager named Cathy and James Krebs. Rather than tell the truth and admit retaliation, Cathy and Krebs lied and claimed generically that Ms. Anderson's work performance had slipped.

16. To provide some evidence of disparate treatment based upon gender, Franciscan did finally terminate the rapist, Francisco Gonzales. However, Franciscan placed Mr. Gonzales on leave for several weeks and performed a full, formal investigation before deciding to terminate him for raping Ms. Anderson.

17. By way of contrast, Ms. Anderson, a woman and the rape victim, was not similarly provided the courtesy of any type of leave time, investigation or any say regarding any reasons Franciscan claims it fired her. Ms. Anderson was not afforded similar courtesy or protections that were provided to the male, her rapist.

18. In addition to the horrible way in which Franciscan permitted its managers to treat Ms. Anderson, Franciscan did not provide any assistance to Anderson as she tried to recover from the rape by her night kitchen manager. For example, Franciscan did not pay (nor did worker's compensation insurance pay) for Anderson's medical treatment, including the emergency room visit. Franciscan did not pay for any counseling or mental health treatment. Franciscan did nothing to accommodate Anderson after the rape. Instead, Franciscan managers were critical, attacking Anderson and quickly firing her in retaliation for reporting her manager for rape.

19. Ms. Anderson's Title VII claims are made for 1) sexual harassment creating a sexually hostile work environment (rape by a supervisor), 2) retaliation, and 3) disparate treatment (sex discrimination). While Ms. Anderson's sex harassment claims are very strong and stand on their own, particularly as Anderson was a young employee raped by her much older, adult supervisor, Ms. Anderson can just as easily prove her Title VII retaliation claim.

20. **Sexual Harassment**.  With respect to rape by a supervisor, Anderson can easily prove that she was subjected to an actionable, sexually hostile work environment. Title VII protects employees against a hostile work environment so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013) (citation

and internal quotation marks omitted). "To pursue a hostile work environment claim, [Plaintiff] must prove (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009).

In terms of Franciscan's liability for the harassment, Ms. Anderson's harasser was her supervisor, Francisco Gonzales. Even if this were only a hostile work environment case, rather than a case with termination of employment establishing the adverse employment action, Franciscan would be liable under a theory of *respondeat superior,* because the supervisor created the sexually hostile work environment. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010).

"Rape is unquestionably among the most severe forms of sexual harassment. Being raped by a business associate, while on the job, irrevocably alters the conditions of the victim's work environment. It imports a profoundly serious level of abuse into a situation that, by law, must remain free of discrimination based on sex. Being raped is, at minimum, an act of discrimination based on sex. See *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995) ("Just as every murder is also a battery, every rape committed in the employment setting is also discrimination based on the employee's sex.''). Thus, the employer's reaction to a single serious episode may form the basis for a hostile work environment claim." See *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967–68 (9th Cir. 2002).

21. **Retaliation**. Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because [s]he has made a charge, testified,

assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To prevail on an unlawful retaliation claim, Plaintiff "must prove three elements: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). "For purposes of retaliation claims, statutorily protected activity generally consists of either an employee filing a charge with the EEOC or opposing any practice made unlawful under 42 U.S.C. § 2000e–3(a)." *Nielson v. Acorn Corrugated Box Co.*, 2002 WL 1941365, at *4 (N.D. Ill. Aug. 21, 2002); *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009) ("Title VII forbids an employer from discriminating against an employee who has opposed any practice made unlawful by Title VII.").

In this case, there is no dispute that Anderson properly reported her supervisor, Francisco Gonzales, for rape just before Anderson was fired. Moreover, Anderson's job was in no jeopardy before the rape and before her report of the rape.

22. As described above, Christie Anderson is pursuing hostile work environment based upon sexual harassment, retaliation and sex discrimination (disparate treatment) claims against Franciscan under Title VII of the Civil Rights Act of 1964. Ms. Anderson seeks all available damages, including all equitable relief, all lost wages and benefits, all available compensatory damages, and all available punitive damages. She is seeking payment of all of her reasonable attorney's fees, costs and expenses.

## II.  JURISDICTION AND VENUE

23. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 as Anderson's claims under Title VII of the Civil Rights Act of 1964 raise

federal questions of law.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because much of the unlawful conduct, particularly the act of sexual battery and the decision to retaliate against Anderson by terminating her employment, was committed in the Southern District of Indiana. More specifically, this case is properly assigned to the Indianapolis Division of the U.S. District Court for the Southern District of Indiana because Anderson worked for Franciscan in Hamilton County, Indiana and lives in Hamilton County, Indiana.

### III.  ADMINISTRATIVE PROCEDURES

25. Anderson has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. Anderson received her Notice of Right to Sue from the Equal Employment Opportunity Commission dated August 22, 2023.

### IV.  LEGAL CLAIMS

### *CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*

26. Anderson alleges and incorporates herein by reference paragraphs 1 through 25 above.

27. As detailed above, Franciscan discriminated against Anderson based upon her sex, forced her to work in a hostile work environment created by supervisor sexual battery and harassment, and retaliated against Anderson for reporting sexual battery and harassment against her supervisor.

28. Franciscan's discriminatory and retaliatory actions have violated Anderson's rights which are protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*.

29. As a direct and proximate result of Franciscan's discriminatory and retaliatory

practices, Anderson has found it necessary to retain the services of an attorney and is therefore entitled to her reasonable attorney's fees, costs and expenses in this matter.

30. Anderson is seeking from Franciscan any and all available damages under Title VII, including, but not limited to, all back pay and benefits, front pay and benefits, all available compensatory and punitive damages, her attorney's fees, expenses and costs, and any and all other equitable relief available to Anderson.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christie L. Anderson respectfully requests that the Court enter judgment in her favor against her former employer, Defendant Franciscan Alliance, Inc., and award to her all available damages, including, but not limited to, the following:

1. All damages available under Title VII of the Civil Rights Act of 1964, including all back pay and benefits, all available compensatory and punitive damages, front pay and benefits, and payment of all reasonable attorney's fees, costs and expenses;

2. Costs;

3. Pre-judgment interest, if available; and

4. Any and all other relief just and proper in the premises.

Respectfully Submitted,

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691

By/s/Robert P. Kondras, Jr.
  Robert P. Kondras, Jr.
  Attorney No. 18038-84

Attorney for Plaintiff
kondras@hkmlawfirm.com

### *REQUEST FOR TRIAL BY JURY*

Comes now the plaintiff, Christie L. Anderson, by her counsel, and hereby requests a trial by jury, on all issues which may be tried to a jury.

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.