UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTIE L. ANDERSON, | ) |
| Plaintiff, | ) |
| v. | ) Cause No.: 1:23-cv-1500-SEB-TAB |
| FRANCISCAN ALLIANCE, INC. d/b/a FRANCISCAN HEALTH CARMEL, | ) |
| Defendant. | ) |

**DEFENDANT FRANCISCAN ALLIANCE, INC. d/b/a FRANCISCAN HEALTH CARMEL'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant, Franciscan Alliance, Inc. d/b/a Franciscan Health Carmel ("Defendant" or "Franciscan"), by counsel, for its Answer to the Complaint of Plaintiff Christie Anderson ("Plaintiff" or "Anderson"), states as follows:

**I. FACTUAL ALLEGATIONS**

1. Anderson is a resident of Fishers, Hamilton County, Indiana.

**ANSWER:** Defendant is without sufficient knowledge to admit or deny the allegations in Paragraph 1 of the Complaint and, therefore, denies the allegations.

2. Franciscan hired Christie L. Anderson to work for it as a Food Service Associate at its facility at 10777 North Illinois Street, Carmel, Indiana 46032. Franciscan hired Anderson on or about April 11, 2022. Franciscan wrongfully terminated Anderson's employment on or about January 31, 2023. During her entire period of employment with Franciscan, Anderson did good work and met all of Franciscan's reasonable expectations.

**ANSWER:** Defendant admits that it hired Plaintiff to work as a Food Service Associate I at its facility at 10777 North Illinois Street, Carmel, Indiana 46032 on or about April 11, 2022, and

1

Defendant admits that it terminated Plaintiff's employment on or about January 31, 2023. Franciscan denies the remaining allegations in Paragraph 2 of the Complaint.

3. In her food service associate position, Anderson delivered food to patients in their rooms, worked on food preparation and performed dishwashing. Anderson worked 40 hours or more per week. Her base wage was $15.00 per hour and she was paid a night shift differential. Anderson liked her job.

**ANSWER:** Defendant admits that as a Food Service Associate I, Anderson's job duties included delivering food to patients, preparing food, and dishwashing. Defendant admits that Anderson worked an average of 40 hours or more per week, her base wage was $15.37 per hour, and she was paid an evening/night shift differential. Defendant is without sufficient information to admit or deny the remaining allegations in Paragraph 3 of the Complaint and, therefore, denies all remaining allegations.

4. Anderson was hired by the Kitchen Manager named Juan Castillo. Mr. Castillo was no longer employed by Franciscan at the time of the termination of Ms. Anderson's employment.

**ANSWER:** Defendant admits that Juan Castillo was a Manager of Food and Nutrition Services at the time Anderson was hired by Defendant and admits that he was a decisionmaker in the decision to hire Anderson. Defendant admits that Juan Castillo was no longer employed by Defendant at the time of termination of Anderson's employment.

5. At the time of her termination, James Krebs was the new Kitchen Manager.

**ANSWER:** Defendant admits that James Krebs was the Manager of Food and Nutrition Services at the Franciscan Health Carmel facility at the time of Anderson's termination of employment.

6. In approximately September 2022, Franciscan hired a chef and manager named Francisco Polanco Gonzales. Mr. Gonzales was one of Anderson's managers/supervisors. This was particularly true as Anderson was often scheduled to work the evening shift and Mr. Gonzales was her only manager on duty. Often, in the evenings, Mr. Gonzalez was the only manager and Anderson was the only food service employee whose work he was directing.

**ANSWER:** Defendant admits that it hired Francisco Polanco Gonzales on or around September 12, 2022, to work as a Chef, and his job duties included supervising food production for patients and people management activities. Defendant admits that Mr. Gonzales was often the only manager on duty for the evening shift and Anderson was often the only Food Service Associate on duty for the evening shift. Defendant denies the remaining allegations contained in Paragraph 6 of the Complaint.

7. Not long into his employment, Francisco Gonzalez became personal and flirtatious in his comments and questions to Anderson. Mr. Gonzalez went so far as to ask Anderson if she had ever had sex and whether she was taking birth control. At the time, Anderson did not know that Mr. Gonzales was married or that he had children.

**ANSWER:** Franciscan is without sufficient knowledge to admit or deny the allegations in Paragraph 7 of the Complaint and, therefore, denies all allegations.

8. In addition to the fact that Mr. Gonzales was Anderson's boss, Mr. Gonzalez was believed to be about 42 years old. Anderson was 24 years old.

**ANSWER**: Defendant admits that Francisco Polanco Gonzales was 40 years old and Anderson was 24 years old at the time of the events Plaintiff alleges occurred on November 4, 2022, but denies the remaining allegations contained in paragraph 8 of the Complaint.

9. On the evening of November 4, 2022, Anderson was the only food service associate working for Mr. Gonzales, the night chef manager. After working together at the prep table, Mr. Gonzales took a break and went to his office. After a time, Mr. Gonzalez asked Anderson to come into his office. Gonzales proceeded to ask Anderson questions about her love life and escalated the conversation to the point that he told Anderson he didn't do things for free. At that point, Gonzales approached Anderson and began kissing her on both the lips and her neck. Gonzales quickly became more aggressive and got Anderson on the floor, mounted her and raped her.

**ANSWER:** Defendant admits that Anderson was the only Food Service Associate I working and Francisco Polanco Gonzales was the only Chef working on the evening of November 4, 2022. Defendant is without sufficient knowledge to admit or deny the remaining allegations in Paragraph 9 of the Complaint and, therefore, denies all remaining allegations.

10. Anderson believes that she made it home from work around 9:00 – 9:30 p.m. Anderson may not have given all the details of Gonzalez sexual attack, but Anderson told her father, Mark Anderson, right away that she was afraid to return to work.

**ANSWER:** Defendant is without sufficient knowledge to admit or deny the allegations in Paragraph 10 of the Complaint and, therefore, denies all allegations.

11. The very next day, November 5, 2022, Anderson telephoned 911 to report Gonzalez for rape. The 911 operator connected Anderson with the Carmel, Indiana city police. Anderson spoke first with an officer and was then connected with Detective Mark Paris. Initially, Detective Paris told Anderson to meet him at the emergency room at St. Vincent's Hospital on 86th Street in Indianapolis to submit to an examination and rape kit. Anderson did so, but the nurse in charge of the rape kit procedure was not at St. Vincent's Hospital. Anderson was asked to travel to Eskanazi

Hospital in Indianapolis to meet this nurse. She did so and submitted to medical examination and the rape kit. Mr. Gonzalez' DNA was found.

**ANSWER:** Defendant is without sufficient knowledge to admit or deny the allegations in Paragraph of the Complaint and, therefore, denies all allegations.

12. Mark Anderson, Ms. Anderson's father, first reported Mr. Gonzalez for raping Christie Anderson to Franciscan management. Mark Anderson first made the report to Franciscan's executive chef, Raul Roges. Mr. Roges referred Mr. Anderson to the Franciscan Human Resources Manager at the Carmel facility (believed to be named "Cathy"). Ms. Anderson then had at least 2 interviews with Cathy.

**ANSWER:** Defendant admits that on November 5, 2022, a man believed to be Anderson's father called Raul Roges and stated that Anderson had been raped by Francisco Polanco Gonzales the day before. Defendant admits that on November 5, 2022, Defendant's human resources department was also informed about the alleged incident and admits that Cathy Rogers, a Coworker and Labor Relations Specialist for Defendant, interviewed Anderson at least twice in connection with the alleged incident. Defendant is without sufficient knowledge to admit or deny the remaining allegations in Paragraph 12 of the Complaint and, therefore, denies all remaining allegations.

13. Christie Anderson reported Francisco Gonzales to Franciscan for raping her immediately afterward. As mentioned above, Ms. Anderson was interviewed at least twice by the Franciscan human resources manager named Cathy.

**ANSWER:** Defendant admits that Cathy Rogers, a Coworker and Labor Relations Specialist for Defendant, interviewed Anderson at least twice after Defendant became aware of the alleged rape. Franciscan denies the remaining allegations in Paragraph 13 of the Complaint.

14. Right after Ms. Anderson reported her manager for rape, Franciscan managers began a campaign to retaliate and shame Anderson. The acts of retaliation included:

1. Franciscan managers including Human Resources Manager Cathy, Kitchen Manager James Krebs and Executive Chef Raul Roges threatened Ms. Anderson and pressured her not to speak to anyone about Francisco Gonzales or the fact that he had raped her.

2. Almost immediately after the report, Executive Chef Raoul Rogers took away most of Ms. Anderson's preferred job duties – particularly delivery of food to patients and food preparation – and instead made Ms. Anderson work away from other food service workers as a dishwasher.

3. James Krebs actually threatened to discipline Ms. Anderson and "write her up" for telling a coworker that Francisco Gonzales had raped her.

4. Moreover, Franciscan began to criticize Ms. Anderson's work and did write her up claiming she was not performing her job well.

5. The human resources manager named Cathy tried to shame Ms. Anderson for reporting Francisco Gonzales for rape by telling her Mr. Gonzales had children and had "mouths to feed."

6. The human resources manager named Cathy apparently learned that Ms. Anderson had also been a child victim of sexual abuse and battery by a step-parent (who was prosecuted and imprisoned). Even though it was incredibly inappropriate, Cathy interrogated Ms. Anderson about the early sex abuse.

7. James Krebs became increasingly hostile toward Ms. Anderson, often yelling at her. For example, Krebs yelled at Christie Anderson several times when he learned she was crying about rape by Francisco Gonzalez.

**ANSWER:** Defendant denies the allegations in Paragraph 14 of the Complaint.

15. Ultimately, Franciscan fired Christie Anderson in retaliation for her rape report and request for help. Ms. Anderson was fired on January 31, 2023 by the Human Resources Manager named Cathy and James Krebs. Rather than tell the truth and admit retaliation, Cathy and Krebs lied and claimed generically that Ms. Anderson's work performance had slipped.

**ANSWER:** Defendant admits that Anderson's employment was terminated on January 31, 2023, and that Cathy Rogers, Coworker and Labor Relations Operations Specialist, and James

6

Krebs were involved in the decision to terminate Plaintiff's employment, but denies all remaining allegations in Paragraph 15 of the Complaint.

16. To provide some evidence of disparate treatment based upon gender, Franciscan did finally terminate the rapist, Francisco Gonzales. However, Franciscan placed Mr. Gonzales on leave for several weeks and performed a full, formal investigation before deciding to terminate him for raping Ms. Anderson.

**ANSWER:** Defendant admits that Francisco Gonzales was placed on unpaid suspension following the alleged incident while Defendant was conducting an investigation into the alleged incident and that Francisco Gonzales was later terminated from employment with Defendant. Defendant denies the remaining allegations in Paragraph 16 of the Complaint.

17. By way of contrast, Ms. Anderson, a woman and the rape victim, was not similarly provided the courtesy of any type of leave time, investigation or any say regarding any reasons Franciscan claims it fired her. Ms. Anderson was not afforded similar courtesy or protections that were provided to the male, her rapist.

**ANSWER:** Defendant denies the allegations in Paragraph 17 of the Complaint.

18. In addition to the horrible way in which Franciscan permitted its managers to treat Ms. Anderson, Franciscan did not provide any assistance to Anderson as she tried to recover from the rape by her night kitchen manager. For example, Franciscan did not pay (nor did worker's compensation insurance pay) for Anderson's medical treatment, including the emergency room visit. Franciscan did not pay for any counseling or mental health treatment. Franciscan did nothing to accommodate Anderson after the rape. Instead, Franciscan managers were critical, attacking Anderson and quacking firing her in retaliation for reporting her manager for rape.

**ANSWER:** Franciscan denies the allegations in Paragraph 18 of the Complaint.

19. Ms. Anderson's Title VII claims are made for 1) sexual harassment creating a sexually hostile work environment (rape by a supervisor), 2) retaliation, and 3) disparate treatment (Sex discrimination). While Ms. Anderson's sex harassment claims are very strong and stand on their own, particularly as Anderson was a young employee raped by her much older, adult supervisor, Ms. Anderson can just as easily prove her Title VII retaliation claim.

**ANSWER:** Paragraph 19 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that Plaintiff is bringing the claims in Paragraph 19 of the Complaint but denies the events complained of and giving rise to the Complaint occurred and denies the remaining allegations in Paragraph 19 of the Complaint.

20. **Sexual Harassment**. With respect to rape by a supervisor, Anderson can easily prove that she was subjected to an actionable, sexually hostile work environment. Title VII protects employees against a hostile work environment so "permeated with discriminatory intimidation, ridicule, and insult that it is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2023 (citation and internal quotation marks omitted). "To pursue a hostile work environment claim, [Plaintiff] must prove (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009).

In terms of Franciscan's liability for the harassment, Ms. Anderson's harasser was her supervisor, Francisco Gonzales. Even if this were only a hostile work environment case, rather than a case with termination of employment establishing the adverse employment action

Franciscan would be liable under a theory of respondeat superior, because the supervisor created the sexually hostile work environment. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010).

"Rape is unquestionably among the most severe forms of sexual harassment. Being raped by a business associate, while on the job, irrevocably alters the conditions of the victim's work environment. It imports a profoundly serious level of abuse into a situation that, by law, must remain free from discrimination based on sex. Being raped is, at minimum, an act of discrimination based on sex. See *Brock v. Unites States*, 64 F.3d 1421, 1423 (9th Cir. 1995) ("Just as every murder is also a battery, every rape committed in the employment setting is also discrimination based on the employee's sex."). Thus, the employer's reaction to a single serious episode may form the basis for a hostile work environment claim." See *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967-68 (9th Cir. 2002).

**ANSWER:** Paragraph 20 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 20 of the Complaint.

21. **Retaliation**. Title VII's anti-retaliation provision makes it unlawful for an employer to discrimination against an employee "because [s]he had made a charge, testified, assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To prevail on an unlawful retaliation claim, Plaintiff "must prove three elements: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005). "For purposes of retaliation claims, statutorily protected activity generally consists of either an employee filing a charge with the EEOC or opposing any practice

made unlawful under 42 U.S.C. § 2000e-3(a)." Nielson v. Acorn Corrugated Box Co., 2002 WL 1941365, at *4 (N.D. Ill. Aug. 21, 2002); Scruggs v. Garst Seed Co., 587 F.3d 832, 838 (7th Cir. 2009) ("Title VII forbids an employer from discriminating against an employee who has opposed any practice made unlawful by Title VII.").

In this case, there is no dispute that Anderson properly reported her supervisor, Francisco Gonzales, for rape just before Anderson was fired. Moreover, Anderson's job was in no jeopardy before the rape and before her report of the rape.

**ANSWER:** Paragraph 21 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 21 of the Complaint.

22. As described above, Christie Anderson is pursuing hostile work environment based upon sexual harassment, retaliation and sex discrimination (disparate treatment) claims against Franciscan under Title VII of the Civil Rights Act of 1964. Ms. Anderson seeks all available damages, including all equitable relief, all lost wages and benefits, all available compensatory damages, and all available punitive damages. She is seeking payment of all of her reasonable attorney's fees, costs and expenses.

**ANSWER:** Paragraph 22 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that Plaintiff is pursuing claims and relief as described in Paragraph 19 of the Complaint but denies that the events complained of and giving rise to the Complaint occurred and denies that Plaintiff is entitled to any relief thereunder.

## II. JURISDICTION AND VENUE

23. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 as Anderson's claims under Title VII of the Civil Rights Act of 1964 raise federal questions of law.

**ANSWER:** Defendant admits that the listed statute confers subject matter jurisdiction but denies that Plaintiff is entitled to any relief thereunder.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because much of the unlawful conduct, particularly the act of sexual battery and the decision to retaliate against Anderson by terminating her employment, was committed in the Southern District of Indiana. More specifically, this case is properly assigned to the Indianapolis Division of the U.S. District Court for the Southern District of Indiana because Anderson worked for Franciscan in Hamilton County, Indiana and lives in Hamilton County, Indiana.

**ANSWER:** Defendant admits that venue is proper in this district but denies that the events complained of and giving rise to Plaintiff's claims occurred.

## III. ADMINISTRATIVE PROCEDURES

25. Anderson has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit. Anderson received her Notice of Right to Sue from the Equal Employment Opportunity Commission dated August 22, 2023.

**ANSWER:** Defendant admits that Plaintiff filed Charge No. 470-2023-01881 with the Equal Employment Opportunity Commission ("EEOC") and that the EEOC issued a Notice of Right to Sue to Plaintiff on or about August 22, 2023. Defendant is without sufficient knowledge to admit or deny the remaining allegations in Paragraph 25 of the Complaint and, therefore, denies the allegations.

## IV. LEGAL CLAIMS

## CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

26. Anderson alleges and incorporates herein by reference paragraphs 1 through 25 above.

**ANSWER:** Defendant hereby incorporates its answers contained in Paragraphs 1 through 25 above.

27. As detailed above, Franciscan discriminated against Anderson based upon her sex, forced her to work in a hostile work environment created by supervisor sexual battery and harassment, and retaliated against Anderson for reporting sexual battery and harassment against her supervisor.

**ANSWER:** Defendant denies the allegations in Paragraph 27 of the Complaint.

28. Franciscan's discriminatory and retaliatory actions have violated Anderson's rights which are protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*.

**ANSWER:** Defendant denies the allegations in Paragraph 28 of the Complaint.

29. As a direct and proximate result of Franciscan's discriminatory and retaliatory practices, Anderson has found it necessary to retain the services of an attorney and is therefore entitled to her reasonable attorney's fees, costs and expenses in this matter.

**ANSWER:** Defendant denies the allegations in Paragraph 29 of the Complaint.

30. Anderson is seeking from Franciscan any and all available damages under Title VII, including, but not limited to, all back pay and benefits, front pay and benefits, all available compensatory and punitive damages, her attorney's fees, expenses and costs, and any and all other equitable relief available to Anderson.

**ANSWER:** Defendant admits that Anderson is seeking relief as stated in Paragraph 30 of the Complaint but denies that Anderson is entitled to any relief.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim upon which relief may be granted.

2. Plaintiff's claims are barred as she has failed to timely exhaust her administrative remedies.

3. Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the scope of or are inconsistent with the Charge of Discrimination she filed with the U.S. Equal Employment Opportunity Commission, Charge No. 470-2023-01881, and, accordingly, Plaintiff has failed to exhaust her administrative remedies to that extent.

4. Plaintiff is barred from recovery because any instances complained of by Plaintiff in her Complaint were not the result of discrimination. All employment decisions regarding or affecting Plaintiff were based upon legitimate, non-discriminatory, non-retaliatory, and reasonable business justifications, including compliance with federal law, without regard to her religious beliefs or any other protected characteristic.

5. Even if the trier of fact were to determine that discriminatory motives or reasons played any part in any employment decisions or actions regarding the Plaintiff, which Defendant denies, such decisions or actions would have been taken in any event for legitimate, non-discriminatory and non-retaliatory reasons, including compliance with federal law.

6. Plaintiff's claims are barred under the doctrine of estoppel and/or unclean hands.

7. Plaintiff's claims are barred under the doctrine of laches.

8. Plaintiff's claims are barred, in whole or in part, by the doctrine of after-acquired evidence.

9. Plaintiff's claims are barred, in whole or in part, because Plaintiff was at all relevant times an at-will employee.

10. Defendant acted in good faith at all times and had reasonable grounds for believing that any act(s) it took did not violate any applicable federal, state, or local laws.

11. Plaintiff has failed to reasonably mitigate her damages, thus barring or reducing her recovery.

12. Defendant denies all allegations of the Complaint to which no response was given.

13. Defendant reserves the right to raise any other defenses that may become available or apparent as this case proceeds.

**WHEREFORE,** Defendant Franciscan Alliance, Inc. d/b/a Franciscan Health Carmel respectfully requests that Plaintiff take nothing by way of her Complaint, that judgment be entered in favor of Defendant and against Plaintiff, for Defendant's costs, and for all other relief proper in the premises.

Dated: October 16, 2023

By: Amy J. Adolay, Atty. No. 23147-49
KRIEG DEVAULT LLP
12800 N. Meridian Street, Suite 300
Carmel, Indiana 46032
Telephone: (317) 238-6330 (Direct)
(317) 566-1110 (Main)
Facsimile: (317) 636-1507
E-Mail: aadolay@kdlegal.com

Virginia A. Talley, Atty. No. 36171-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Telephone: (317) 238-6260 (Direct)
(317) 636-4341 (Main)
Facsimile: (317) 636-1507
E-Mail: vtalley@kdlegal.com

*Attorneys for Defendant
Franciscan Alliance, Inc. d/b/a
Franciscan Health Carmel*

KD_14933316_4.docx